**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CONNIE FRANCES FREEMAN,**

       **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 3:10-00357**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner") denying Claimant's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433. This case was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The case is presently pending before the Court on the parties' cross-motions for judgment on the pleadings as articulated in their briefs. (Docket Nos. 7 and 8).

The undersigned United States Magistrate Judge has fully considered the evidence and the arguments of counsel.  For the reasons set forth below, the undersigned proposes and recommends that the United States District Judge find

that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

## I.    **Procedural History**

Plaintiff, Connie Frances Freeman (hereinafter "Claimant"), protectively filed a DIB application on June 26, 2008,[1] alleging disability beginning January 1, 2006 due to "bad knees, high blood pressure & legs and osteoarthritis." (Tr. at 130 and 135). Her application was denied initially and upon reconsideration. (Tr. at 55-59 and 61-63).

Claimant then filed a timely request for a hearing, which was held on December 18, 2008 before the Honorable William R. Paxton, Administrative Law Judge (hereinafter "ALJ"). (Tr. at 18-52). By decision dated June 22, 2009, the ALJ determined that Claimant had not been under a disability as defined by the Social Security Act. (Tr. at 9-17). The ALJ's decision became the final decision of the Commissioner on January 28, 2010 when the Appeals Council denied Claimant's request for review. (Tr. at 1-5). On March 18, 2010, Claimant brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Docket No. 1). The Commissioner filed his Answer and a transcript of the administrative proceedings on June 2, 2010. (Docket Nos. 5 and 6). The parties filed their briefs in support of judgment on the pleadings on July 1, 2010 and July 21, 2010. (Docket Nos. 7 and 8). The matter is, therefore, ripe for resolution.

---

[1] Claimant filed an application for Social Security Income (SSI) on the same date, but the application was denied because her income exceeded the limits of Title XVI of the Social Security Act. Claimant also previously filed DIB and SSI applications in 1993 which were denied at the initial level with no further appeal. (*See* Tr. at 110).

## II.   Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. See *Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A).

The Social Security Regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c).

If a severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits. However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has

established a *prima facie* case of disability, and the burden shifts to the Commissioner to prove, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

In this case, the ALJ determined that Claimant met the insured status requirements for DIB through June 30, 2007 and had not engaged in substantial gainful activity since her alleged disability onset date of January 1, 2006, thereby fulfilling the first step of the sequential evaluation. (Tr. at 11, Finding Nos. 1 and 2). At the second step of the analysis, the ALJ concluded that Claimant had severe impairments of degenerative arthritis in the knees and left ankle and obesity. (Tr. at 11, Finding No. 3). The ALJ also considered Claimant's high blood pressure and found it to be a non-severe impairment. (*Id.*) At the third step of the evaluation, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 12, Finding No. 4). The ALJ then found that Claimant had the residual functional capacity ("RFC") to do the following:

> [L]ight work as defined in 20 C.F.R. 404.1567(b). The claimant could do no climbing of ladders, ropes, or scaffolds. She could occasionally climb

-4-

ramps and stairs. She could occasionally balance, kneel, and stoop. She could do no crouching or crawling. She would have to avoid concentrated exposure to hazards such as heights and machinery.

(Tr. at 12, Finding No. 5).

Considering the testimony of a vocational expert, the ALJ concluded that Claimant was capable of performing her past relevant work as a grocery store cashier, because it did not require work-related activities which were precluded by her RFC. (Tr. at 16, Finding No. 6). The ALJ noted that Claimant's work as a grocery store cashier in 1998 lasted long enough for her to learn to perform the job and constituted substantial gainful activity with the meaning of the Regulations. (*Id.*). In comparing Claimant's RFC with the physical and mental demands of this work, the ALJ found that Claimant was capable of completing the duties of the job as they were generally performed. (*Id.*). Accordingly, Claimant was not under a disability as defined by the Social Security Act. (Tr. at 17, Finding No. 7).

## III.   **Scope of Review**

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. In *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972), the Fourth Circuit Court of Appeals defined substantial evidence as the following:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, *supra at* 776, quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* The Court's responsibility is to "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The ultimate question for the Court is whether the decision of the Commissioner is well-grounded, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987).  The Court decides "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart,* 434 F. 3d 650,653 (4th Cir. 2005), citing *Craig v. Chater,* 76 F.3d585, 589 (4th Cir. 2001).

## IV.   Claimant's Background

Claimant was 45 years old on the date of her administrative hearing. (Tr. at 22). She attended high school through most of the ninth grade. (*Id.*). She could speak and understand English. (Tr. at 134). Her past relevant work included employment as a dishwasher at a restaurant, a housekeeper, a deli worker, a cashier at a grocery store, and a kitchen aide and housekeeper at a nursing home. (Tr. at 136).

## V.   Challenges to the Commissioner's Decision

Claimant contends that the decision of the Commissioner is not supported by substantial evidence for three reasons: (1) the ALJ erred in assessing Claimant's credibility, (2) the ALJ improperly afforded the non-examining State agency

consultant's opinion significant weight, and (3) newly submitted medical evidence required a remand pursuant to sentence six of 42 U.S.C. § 405(g). (Docket No. 7).

The Commissioner responds (1) that the ALJ properly evaluated Claimant's subjective complaints of pain and assessed her credibility under 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p; (2) that the ALJ gave proper weight to the State agency physician's assessment; and (3) that the case should not be remanded on the basis of newly submitted evidence because Claimant could have obtained the evidence before the ALJ issued his decision and the evidence would not have been material to the ALJ's decision. (Docket No. 8).

## VI.  <u>Medical Records</u>

The undersigned reviewed the medical evidence in its entirety and summarizes below the relevant records. The majority of the medical evidence post-dates the period during which Claimant was insured.  However, inasmuch as Claimant must prove that she was disabled on or before the final date on which she met the insured requirements for entitlement to disability benefits, the undersigned has considered this evidence to determine whether it elucidates Claimant's condition during the relevant time period. *See Stahl v. Commissioner,* 2008 WL 2565895, *4 (N.D.W.Va.), citing *Highland v. Apfel,* 149 F. 3d 873 (8th Cir. 1998).

### A.    <u>Evidence Relating to the Relevant Time Period</u>

The medical evidence created during the relevant time frame (January 1, 2006 through June 30, 2007) is essentially limited to three office visits with Enrique C. Sta. Ana, Jr., M.D., at Emergi-Care, Inc. (Tr. at 208). On December 7, 2006, Claimant made her initial visit to Dr. Sta. Ana, complaining that her blood pressure was

"running high," but reporting no other medical concerns. (Tr. at 208). On December 22, 2006, Claimant returned to Dr. Sta. Ana for "follow up with blood work and EKG." (Tr. at 209). Finally, on February 27, 2007, Claimant presented for a routine check-up with Dr. Sta. Ana. At this visit, Claimant complained of pain in her right leg radiating to her hip, indicating that the pain had been present for years, but was getting worse. (Tr. at 210).[2] With the exception of some routine laboratory reports and a medication notation, the transcript of proceedings contains no other medical record prepared between January 1, 2006, the alleged disability onset date, and June 30, 2007, the date on which Claimant was last insured.

## B. Post-Insured Evidence

On August 21, 2007, Claimant had a check-up appointment with Dr. Sta. Ana during which she complained that her right leg pain continued to increase and her leg was swelling. (Tr. at 211). Dr. Sta. Ana scheduled Claimant to undergo venous and arterial doppler studies. A bilateral venous duplex study was completed on September 17, 2007. The indication for the study was noted to be varicose veins, and the findings included evidence of a Baker's cyst, but no evidence of deep reflux. (Tr. at 221-223).

On March 20, 2008, Claimant's left knee reportedly "went out," causing her to fall and hurt her left foot. (*See* Tr. at 216). Three views were taken of her left ankle at CAMC Teays Valley Hospital. (Tr. at 225). John E. Reifsteck, M.D. noted possible soft tissue injury to the lateral aspect of the left ankle, as well as some degenerative

---

[2] By way of background, Claimant reports having two open surgeries on her right knee and one knee arthroscopy in 1986 and 1987, prior to her alleged onset of disability. (*See* Tr. at 234 and 30). She states that she had knee pain since around the sixth grade. (*Id.*).

changes, but no gross signs of acute fracture or dislocation. (Tr. at 225).

Five days later, on March 25, 2008, Claimant presented for a follow-up appointment with Dr. Sta. Ana, reporting her fall and visit to the emergency room. (Tr. at 216). She acknowledged that x-rays of her foot showed no fracture or break, but stated that she was told that her "ligaments were messed up" and that they placed her foot in a brace. (*Id.*).   On the same date, four views were taken of Claimant's right knee at CAMC Teays Valley Hospital and were compared to prior studies taken in August 2007.   (Tr. at 226). Christopher A. Schlarb, M.D. noted severe degenerative changes in Claimant's right knee, particularly within the medial joint compartment; that a "loose body" was possibly present in her knee, which was also shown in her prior studies; and that no acute fractures or dislocations were identified. (*Id.*).  Dr. Schlarb's impression was severe degenerative disease involving the knees. (*Id.*).

On April 4, 2008, an MRI was taken of Claimant's right knee at CAMC Teays Valley Hospital, indicating marked degeneration with advanced tricompartmental degenerative joint disease most pronounced at the medial location. (Tr. at 228). Jeffrey C. Dameron, M.D., noted that he could not identify the posterior horn of the medial meniscus and that the posterior horn of the lateral meniscus appeared complex and probably torn and combined with degenerative intrasubstance degeneration; that he suspected intrarticular loose body that migrated posterior to the medial head of the gastrocnemius muscle insertion site; that she had small to moderate knee joint effusion; that she had what was most compatible with bone bruising and/or chronic hyperemia from near bone-on-bone appearance of the medial knee joint compartment; and that he could not visualize the anterior cruciate

ligament which concerned him for it being chronically torn and/or degenerated; and
that her PLC and collateral ligaments remained intact. (*Id.*).

On May 7, 2008, Claimant was evaluated by Christopher M. Santangelo, PA-C
(Physician Assistant-Certified) at Teays Valley Orthopedics to assess her right knee
pain. (Tr. at 235). Mr. Santangelo's impression was that Claimant suffered from
severe osteoarthritis in her right knee with a chronic ACL tear. (*Id.*).  Mr. Santangelo
did not comment on the status of Claimant's left knee in the medical history or
physical examination notes from this visit. (*Id.*).

On June 9, 2008, Claimant was given an ultrasonogram of the deep veins of
her left lower extremity. (Tr. at 229). Dr. Dameron noted that there was no
sonographic evidence of deep venous thrombosis, but Claimant did have a rather
large popliteal cyst ("Baker's cyst"). (*Id.*).  On the same date, four x-ray views were
taken of her left knee, indicating a cystic bone lesion greater than 3 centimeters with
what could be internal septations and compartments, which would be most
compatible with an aneurismal bone cyst. (Tr. at 230).

On June 14, 2008, an MRI was taken of Claimant's left knee without contrast.
(Tr. at 231-232). Frank A. Muto, M.D., noted moderate three compartment
degenerative  changes of the left knee, degenerative cartilidge thinning in the medial
and lateral femoral condyles and lateral facet of the patella, a large Baker's cyst,
subcutaneous edema, and a questionable mild strain of the medial collateral
ligamentous complex. (Tr. at 232).

On June 23, 2008, Claimant returned to Teays Valley Orthopedics
complaining of left knee pain that she had for "a long time." (Tr. at 236). Mr.

Santangelo's impression was that she had osteoarthritis with a medial meniscus tear and popliteal cyst in her left knee. (*Id.*). He discussed the options with her and she stated that she wished to proceed with a diagnostic and surgical arthroscopy of her left knee with an open excision of the popliteal cyst. (*Id.*).

On July 11, 18, and 25 of 2008, Claimant was given Synvisc injections in her right knee at Teays Valley Orthopedics. (Tr. at 241-243). She returned on August 25, 2008 and was seen by James B. Cox, M.D., reporting that her knee was a "little bit better" and that she could go back and forth to the store, but "that [was] about it as far as strenuous activities." (Tr. at 284). Dr. Cox reviewed her x-rays and stated that she had advanced degenerative changes to both knees and that he did not think that further anthrsocopy would help. (*Id.*). Dr. Cox believed that they exhausted all conservative treatment options, as she was taking Lodine, receiving intermittent cortisone and Synvisc injections, wearing a brace, doing home exercises. (*Id.*). Therefore, given the fact that she was "very young," Dr. Cox thought the next step would be total replacement anthroplasty on both knees. (*Id.*).

### C. RFC Opinions

On August 2, 2008, agency single decision maker Kay Means was asked to complete a physical assessment evaluating Claimant's RFC through her last insured date. (Tr. at 155). Ms. Means found that there was insufficient evidence prior to Claimant's last insured date upon which to assess Claimant's RFC. (Tr. at 162).

On September 10, 2008, agency consultant Rabah Boukhemis, M.D. was also asked to complete an assessment of Claimant's physical RFC during the relevant time period. (Tr. at 251). Dr. Boukhemis likewise determined that there was insufficient

medical evidence from Claimant's alleged onset date through her last insured date upon which to make a reasoned assessment. (*Id.*).

On August 13, 2009, Dr. Sta. Ana wrote a letter, which was submitted to the Appeals Council in the course of its consideration of Claimant's request for a review of the ALJ's unfavorable decision. (Tr. at 103). Dr. Sta. Ana stated only the following: Claimant "has history of osteoarthritis for years and was getting worse on February 27, 2007.  She was unable to perform full time work prior to June 30, 2007." (*Id.*). The Appeals Council made this letter a part of the record.  (Tr. at 5).

## VII.   <u>Analysis</u>

### A.   <u>Credibility</u>

Claimant first argues that the ALJ erred in finding that Claimant was not fully credible when describing the intensity, persistence and limiting effects of her pain and other symptoms.  According to Claimant, her testimony was not inconsistent with any material fact or the evidence of record. She contends that the ALJ had a "predetermined" conclusion regarding her RFC and then rejected her statements about pain and other symptoms, because they were in conflict with that premature conclusion.   (Docket No. 7).  Having considered all of the evidence, the undersigned finds this argument to be entirely without merit.

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, pursuant to 20 C.F.R. §§ 404.1529 and 416.929, in order to determine their limiting effects on a claimant.  First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's

symptoms, including pain.  SSR 96-7P.  Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must assess the credibility of any statements made by a claimant to support the alleged disabling effects. The Ruling sets forth the factors that the ALJ must consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the credibility determination must be based on a consideration of all of the evidence in the case record.  *Id.*

When evaluating whether an ALJ's credibility determinations are supported by substantial evidence, the Court is not charged with simply replacing its own credibility assessments for those of the ALJ; rather, the Court must review the evidence to determine if it is sufficient to support the ALJ's conclusions. "In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence . . . or substitute its own judgment for that of the Commissioner." *See Hays v. Sullivan,* 907 F.2d. 1453, 1456 (4th Cir. 1990).   Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-990 (4th Cir. 1984), citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976).

-13-

In this case, the ALJ found that Claimant had medically determinable impairments that could cause her alleged symptoms.  As such, the ALJ considered Claimant's statements about the intensity, persistence and limiting effects of her symptoms, comparing and contrasting them to (1) Claimant's daily activities, such as performing housework and driving to the post office, the store, and the doctor's office; (2) the location, duration, frequency, and intensity of her pain and other symptoms, such as pain and numbness in her legs and occasional pain in her hips, feet, and ankles; (3) precipitating and aggravating factors, such as extended periods of standing, walking, or sitting; (4) her medication and side effects, as well as other forms of relief and treatment, such as walking on a treadmill and taking pain medication; and (5) other factors concerning functional limitations related to pain or other symptoms. (Tr. at 13-16); 20 C.F.R. 20 C.F.R. § 404.1529(c)(3). Pointing to inconsistencies between Claimant's statements and the other evidence of record, the ALJ ultimately concluded that Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with her ability to engage in light exertional level work activities as outlined in his RFC finding. (Tr. at 14). After reviewing the ALJ's explanation for his determination and scrutinizing the evidence of record, the undersigned finds that the ALJ's credibility assessment of Claimant is consistent with the applicable regulation, case law, and Social Security Rulings and is supported by substantial evidence. 20 C.F.R. §§ 404.1529; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996).

Claimant testified that she was not able to work because her right leg "buckles," swells, and hurts "all the time" and that she cannot squat or bend it. (Tr. at 25). She also stated that she could not "stay on her [left leg] very long or walk" without it "tighten[ing] up the back" and that she can hardly bend it. (*Id.*). She claimed that she could not put pressure on her legs, such as by lifting things, and that she could not "do steps." (Tr. at 26). She indicated that she could only stand for thirty minutes and that it took her a while to "get moving" after sitting because her legs were so stiff. (Tr. at 27). She testified that she had been falling "for years" because her legs would buckle beneath her. (Tr. at 28). She stated that all of these symptoms were the same before her date last insured, except that her pain was "probably worse" at the time of her hearing, but "not a lot [worse]." (Tr. at 26-28). Claimant also noted high blood pressure on her application for disability benefits; however, she did not describe how it limited her ability to work and only briefly referenced high blood pressure during the administrative hearing. (Tr. at 105 and 34).

The record fails to corroborate Claimant's allegations that she experienced this extreme level of intensity and persistence of symptoms during the period of her alleged disability onset date through her last insured date. As aptly noted by the ALJ, the vast majority of Claimant's medical treatment occurred after June 30, 2007. In fact, the file contains only three progress notes and one letter, written retrospectively, which pertain to the time frame at issue. (Tr. at 208-210 and 103). None of the contemporaneous notes paints a picture of debilitation as conclusive and severe as that described by Claimant at the administrative hearing. Although Dr. Sta. Ana's notes are somewhat illegible, they clearly document that Claimant's only concern at

her initial visit on December 7, 2006 was high blood pressure, (Tr. at 208), which thereafter was treated and controlled. (Tr. at 259). Claimant ostensibly made no mention of concerns related to her knees, legs or ankles during her two documented visits with Dr. Sta. Ana in 2006. (Tr. at 209). Claimant did complain during a routine "check-up" with Dr. Sta. Ana on February 27, 2007 that she had pain in her right leg radiating to her hip, which had been present for years and was worsening. However, the record of this visit does not suggest that Dr. Sta. Ana was overly concerned by this complaint. (Tr. at 210). He did not undertake a diagnostic work-up at that time; on the contrary, he did not order any diagnostic studies of Claimant's extremities until late August 2007, after Claimant complained of increased pain and swelling in her right leg. (Tr. at 211-212).

Admittedly, after Claimant fell in March 2008, her musculoskeletal symptoms became more predominant and widespread and were diagnosed to be degenerative. Still, the record does not substantiate disabling symptoms or a high level of concern, either by Claimant or her physician, over the condition of Claimant's legs and knees on or before June 30, 2007. Of the treatment records prepared by Dr. Sta. Ana during the relevant time frame, one solitary progress note documents that Claimant reported pain in her leg, and that note mentioned only a longstanding pain in the right leg that radiated to her hip. Otherwise, the relevant records are devoid of notations regarding the condition of Claimant's legs and never mention her left leg and her knees, which later become primary locations of pain. (Tr. at 210 and 216). It is implausible that Claimant would have failed to report her symptoms to Dr. Sta. Ana if Claimant was truly experiencing the degree of pain and the extent of functional

-16-

limitation that she described to the ALJ at the hearing.  Furthermore, considering Claimant's willingness to receive medical care, it is probable that she would have sought more aggressive treatment to relieve her debilitating symptoms if they had existed before June 30, 2007.  In fact, when her symptoms became intolerable in Summer 2008, Claimant underwent serial injections in her knees, wore a knee brace, and pursued surgical correction. In contrast, she took none of these steps during her insured period.  The medical records document only a few seemingly routine check-ups during that time frame.

When making a credibility assessment of a claimant's allegations of pain, the ALJ must examine "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual."  SSR 96-7p.  The ALJ is prohibited from rejecting a claimant's allegations of pain ***solely*** on the basis that the pain is not substantiated by objective medical evidence, but may consider the lack of objective evidence or other corroborating evidence as factors in his decision.  *Craig v. Chater,* 76 F.3d. 585 (4th Cir. 1996).

Here, the ALJ determined that Claimant suffered "from some limitation on her ability to perform work but not to the degree alleged." (Tr. at 16). He questioned her credibility of her statements to the extent that they were inconsistent with his RFC assessment, because the descriptions of her daily activities, the absence of diagnostic records, and the lack of medical intervention prior to June 30, 2007 cast into doubt the accuracy of her testimony. (Tr. at 14 and 12). This conclusion is plainly supported

by substantial evidence for the reasons cited above. The record simply does not establish more severe restrictions than those noted in the ALJ's RFC finding and as such, any of Claimant's statements indicating otherwise were properly assessed as not fully credible.

Thus, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that the ALJ's credibility determination was supported by substantial evidence.

### B.   <u>Non-Examining State Physician</u>

Claimant next argues that the ALJ improperly afforded significant weight to the 2008 opinion of the State agency physician, Dr. Boukhemis, despite the fact that Dr. Boukhemis did not examine Claimant or make any finding as to her RFC. Claimant also contends that the ALJ erred in not setting forth his analysis of the factors listed in 20 C.F.R. § 404.1527(d) when he chose to give the greatest weight to Dr. Boukhemis' opinion. (Pl.'s Br. at 7-8).

The undersigned finds Claimant's arguments unpersuasive and further finds no error in the ALJ's treatment of Dr. Boukhemis' opinion. In determining an individual's RFC, an ALJ must consider and evaluate "*all* of the relevant evidence in the case record," SSR 96-8p, including "any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists." SSR 96-6p. Title 20 C.F.R. § 404.1527 outlines how medical opinions will be weighed in determining whether a claimant qualifies for DIB benefits.  In general, the SSA will give more weight to the opinion of an examining medical source than to the opinion of a non-examining source.  *See* 20 C.F.R. §404.1527.  Even

-18-

greater weight will be allocated to the opinion of a treating physician, because that physician is usually most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *Id.* Indeed, a treating physician's opinion will be afforded controlling weight if two conditions are met: (1) the opinion is well-supported by clinical and laboratory diagnostic techniques and (2) it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also,* 20 C.F.R. § 404.1527.

The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. § 404.1527. If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(d).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.  "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator."  SSR 96-2p.  When a treating source's opinion is not given controlling weight, and the opinions of agency experts are considered, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources. . ." 20 C.F.R. § 404.1527.

The opinions of non-examining sources are subject to a more rigorous review than those of treating sources. "For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist" and "all other factors that could have a bearing on the weight to which an opinion is entitled." *Id.* However, "[i]n appropriate circumstances opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.*

As discussed, the lack of medical evidence is a distinguishing factor of Claimant's case. Claimant takes issue with the ALJ's treatment of Dr. Boukhemis' opinion; however, his opinion was the *only* acceptable medical source opinion on the subject of Claimant's RFC available to the ALJ at the time of his decision. In August 2008, single decision maker Kay Means opined that there was insufficient medical evidence prior to Claimant's last insured date to make a RFC finding. (Tr. at 155). The ALJ appropriately afforded little weight to Ms. Means' opinion because she was not an acceptable medical source. (Tr. at 16); *see* SSR 06-03p. Then, in September 2008, Dr. Rabah Boukhemis also found that there was insufficient evidence from the

relevant time period to make a RFC assessment. (Tr. at 251). The ALJ gave Dr. Boukhemis' opinion significant weight as it was "consistent with the medical evidence of record," created during the relevant time frame, which, indisputably, is sparse. (Tr. at 16). No medical source opinion as to Claimant's RFC from any treating or examining physician existed in the record at the time; consequently, no medical source opinion conflicted with or weighed against the validity of Dr. Boukhemis' conclusion. The progress notes from Claimant's treating physician merely recorded Claimant's complaints, vital signs, diagnoses, and medications.  They contained no opinion as to what Claimant was functionally capable of doing despite her limitations. (Tr. at 208-210).

Moreover, Claimant's criticism that Dr. Boukhemis neither examined nor treated her is unjustified. The lack of an examination by Dr. Boukhemis is irrelevant in light of the fact that Claimant was no longer insured by the time Dr. Boukhemis' was retained to complete an RFC assessment. Undoubtedly, a physical examination of Claimant performed by Dr. Boukhemis in September 2008, after Claimant had seemingly experienced a material change in her condition, would not have yielded reliable information as to Claimant's functional abilities over one year earlier.

Likewise, it was unnecessary for the ALJ to provide a more extensive discussion of his evaluation of the factors listed in 20 C.F.R. § 404.1527(d), because there were no competing medical source opinions.  If treating or examining source opinions on the issue of Claimant's RFC had been available at the time of the administrative hearing and were contradictory to Dr. Boukhemis' opinion, the ALJ certainly would have been required to assess and explain the weight given to each

opinion using the factors set forth in 20 C.F.R. § 404.1527(d).  The circumstances of the case, however, rendered any such discussion superfluous.

As indicated *supra,* Dr. Sta. Ana did submit a letter over two years after expiration of Claimant's insured status, opining that Claimant had "a history of osteoarthritis for years and was getting worse on February 27, 2007.  She was unable to perform full time work prior to June 30, 2007." (Tr. at 103).   The Appeals Council considered this opinion and understandably rejected it. Dr. Sta. Ana's letter failed to elucidate the basis for his opinion; failed to outline on a function by function basis what Claimant was physically capable of doing during the relevant time period; and failed to submit objective medical evidence in support of his opinion.  Moreover, the opinion was neither consistent with nor bolstered by Dr. Sta. Ana's own office records.

In addition, Dr. Sta. Ana's statement that Claimant was unable to work during the relevant time period was not a medical opinion, but was a legal conclusion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(3). Medical source opinions on issues reserved to the Commissioner are treated differently than other medical source opinions.  20 C.F.R. 404.1527(e).  In both the aforestated regulation and Social Security Ruling 96-5p, the SSA addresses how medical source opinions are considered when they encroach upon these "reserved" issues; for example, opinions on "whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (the listings); what an individual's residual functional capacity (RFC) is;. . . . and whether an individual is 'disabled' under the Social

-22-

Security Act. . ." Opinions concerning issues reserved for the Commissioner are never entitled to controlling weight or special significance, because "giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine when an individual is disabled."   SSR 96-5p at 2. However, these opinions must always be carefully considered and "must never be ignored."   *Id.*   Although Dr. Sta. Ana's opinion that Claimant was unable to work could not be overlooked, it was not entitled to controlling evidentiary value and was appropriately considered as any other piece of evidence. Because Dr. Sta. Ana did not offer any objective medical evidence to support his conclusions, such as clinical findings or test results, and because his statements were inconsistent with the evidence of record, including his own progress notes from the relevant time period, the letter did not adequately rebut the ALJ's sound decision to afford significant weight to Dr. Boukhemis' opinion.

Thus, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that the ALJ's decision to give significant weight to the opinion of agency physician Dr. Boukhemis was supported by substantial evidence.

### C.     New and Material Evidence

Claimant's final argument is that Dr. Sta. Ana's 2009 letter constitutes new and material evidence warranting remand pursuant to sentence six of 42 U.S.C. § 405(g). (Pl.'s Br. at 6-7).   (Tr. at 103).   Claimant suggests that the letter should be allocated controlling weight, "because it is consistent with substantial evidence and is

-23-

supported by clinical and laboratory diagnostic techniques including MRI's which confirmed severe degenerative problems with Claimant's knees."   (Pl. Br. at 7). Claimant asserts that even if the letter is not given controlling weight, it represents a new and material opinion that may have resulted in the ALJ reaching a different decision.  (*Id.*).

Title 42 U.S.C. § 405(g) provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . ." Remand to the Commissioner on the basis of newly discovered evidence is appropriate if: (1) the evidence is relevant and not cumulative; (2) the Commissioner's decision "might reasonably have been different" had that evidence been presented; (3) good cause for failure to submit the evidence before the Commissioner is established; and (4) Claimant offers "at least a general showing of the nature" of the newly discovered evidence. 42 U.S.C. 405(g); *Borders v. Heckler,* 777 F.2d 954, 955 (4th Cir. 1985).  Evidence is new if it is "neither duplicative nor cumulative," *Bradley v. Barnhart,* 463 F.Supp.2d 577, 581 (S.D.W.V. 2006), and is material if it "bear[s] directly and substantially on the matter in dispute," and generates a "reasonable possibility that the new evidence would have changed the outcome of the determination." *Bradley v. Barnhart, supra* at 579, citing *Bruton v. Massanari,* 268 F3d. 824 (9th Cir. 2001). Accordingly, Claimant must demonstrate that Dr. Sta. Ana's letter constitutes new evidence that is material to the question of whether Claimant was disabled at the time of her hearing before the ALJ. If so, then

Claimant must also provide good cause for not having produced this evidence to the Commissioner during the pendency of her disability application.

Technically, Dr. Sta. Ana's letter is not "new" evidence, because it was submitted during the pendency of the application, was made part of the record, and was considered by the Appeals Council before it refused to review the decision of the ALJ.  In any event, having examined Dr. Sta. Ana's letter, the undersigned is hard-pressed to conclude that there is a reasonable probability that this letter would have changed the outcome of the ALJ's determination.

As noted, the regulations provide that a treating physician's opinion is entitled to controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *see also Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). The opinions expressed in Dr. Sta. Ana's letter are entirely unsupported by explanation, discussion, or data. Dr. Sta. Ana does not, for example, explain how he determined that Claimant had osteoarthritis for years; whether his diagnosis was based on clinical observation, radiographic studies, past medical records or simply on Claimant's subjective reports. Similarly, Dr. Sta. Ana's letter does not indicate the extent of Claimant's osteoarthritis; how it might have limited her range of motion or restricted her ability to perform basic work activities; and how he discerned her level of functioning.  He makes no effort to justify his conclusions or document his knowledge and expertise on the subject matter of the

letter.  Claimant contends that the opinion is supported by objective medical evidence, but the evidence referenced by Claimant post-dated Claimant's insured status.  Contrary to Claimant's statements, Dr. Sta. Ana had no contemporaneous clinical or laboratory data upon which to support his conclusion.

Moreover, Dr. Sta Ana's opinion that Claimant was unable to work during the relevant time period likewise is a bald legal conclusion without identifiable findings or objective evidence. The ALJ is not required to accept the opinion of a treating source when that opinion is given on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e). A bare-bones opinion, written two years late and retrospectively, without any objective supporting medical evidence, is unlikely to have changed the outcome of the ALJ's decision.

Accordingly, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that Dr. Sta. Ana's letter, which Claimant submitted as new evidence to the Appeals Council, does not constitute new or material evidence under the applicable case law and, therefore, does not warrant a remand under sentence six of 42 U.S.C. § 405(g).

## VIII.  Recommendations for Disposition

Based on the foregoing, the undersigned Magistrate Judge respectfully **PROPOSES** that the United States District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Court **DENY** plaintiff's Motion for Judgment on the Pleadings (Docket No. 7); **GRANT** defendant's Motion for Judgment on the Pleadings (Docket No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**  April 19, 2011.

Cheryl A. Eifert
United States Magistrate Judge

-27-